Committee on Pretrial Practice & Discovery

Fall 2008

# Discrete Interrogatory Subparts under Rule 33

By Matthew Albaugh

Interrogatories can be more of a headache than they're worth—questions and answers carefully crafted by lawyers, typically packed to the brim with objections but often lacking in any real substance. Unlike document requests or depositions, the content of interrogatory responses is controlled almost entirely by the parties' lawyers. Interrogatories represent the chance for lawyers to put into practice the bedrock instruction given to witnesses during deposition preparation: Make your answers as short and concise as possible. And for some obstructionist litigators, "short and concise" can quickly turn into "avoid and obfuscate." As a result, the use of interrogatories during the discovery process can be terribly frustrating.

But interrogatories can serve a vital purpose when properly used, helping to assemble information in preparation for depositions and to narrow the issues for trial. Given the typical "kitchen sink" approach espoused by many opposing counsel, it is not unusual for lawyers to give in to the temptation of jamming as many specific topics or subparts as possible into a single interrogatory with the hope of receiving at least some information in response. Unfortunately, following this course can have serious ramifications for your client and your discovery efforts.

## The Numerical Limits of Federal Rule 33

Rule 33(a) prohibits parties from serving more than 25 written interrogatories "including all discrete subparts" without the consent of the responding party or permission from the court. This rule comes out of experience. Prior to 1993, discovery through exhaustion reigned supreme as parties were not limited in the number of interrogatories that could be served on the opposing party. As one court acknowledged at the time, "sheer numerosity is not an objection."[1] The goal of the 25-interrogatory limit in Rule 33(a) is to "reduce the frequency and increase the efficiency of interrogatory practice."[2]

The numerical limit in Rule 33(a) "recognizes the time and expense involved in answering interrogatories and acknowledges that interrogatories might otherwise be used as a means of harassment."[3] The Advisory Committee's notes indicate that the goal of the numerical limit "is not to prevent needed discovery, but to provide judicial scrutiny before parties make potentially excessive use of this discovery device."[4] The 25-interrogatory limit also forces parties to use interrogatories prudently and constructively, instead of serving an excessive number of interrogatories. Courts recognize that a party may render Rule 33(a)'s numerical limitation "meaningless unless each subpart counts as a separate interrogatory."[5]

## What Is a Discrete Subpart?

A party propounding interrogatories should be limited to 25 interrogatories, including "discrete subparts," absent the consent of the responding party or court permission, and sound policy reasons exist to support that limit. But, what is a "discrete" subpart? The rule itself provides no guidance. The Advisory Committee's notes explain that Rule 33(a)'s numerical limit cannot be evaded "through the device of joining as 'subparts' questions that seek information about discrete separate subjects."[6] So, subparts focusing upon "discrete separate subjects," whatever that may mean, seemingly violate the rule. An interrogatory like "What time did the sun rise on August 28, 2008, and what did you have for breakfast that morning?" would appear to focus upon separate subject matters and discrete issues. That is an easy case, and one very few civil litigators likely encounter in their practice.

What about a more common interrogatory that many litigators have likely seen (or used)? Take, for instance, the following rather typical contention interrogatory:

> Do you contend that Jane Doe failed to mitigate her damages? If your response is anything other than an unqualified "no," please do the following:
> 
> a) State all facts upon which you base your contention.
> 
> b) Identify all persons with knowledge or information regarding your contention.
> 
> c) Identify all documents relating to the facts and contentions in this response.

This sample interrogatory undoubtedly has "subparts," but are those subparts "discrete" such that they should be counted as separate interrogatories under Rule 33? Again, the Advisory Committee notes to Rule 33 touch upon this subject, but provide no solid answers to the question: "[A] question asking about the communications of a particular type should be treated as a single interrogatory even though it requests that the times, place, persons present, and contents be stated separately for such communication."[7]

The lack of definition of the term "discrete subparts" has caused confusion for courts as well as attorneys attempting to draft properly written interrogatories. Both courts and attorneys struggle to determine when to describe a subpart as discrete, in part because some interrogatories have subparts that are separately numbered and lettered (explicit subparts), while other interrogatories' subparts are not separately numbered or lettered (implicit subparts).

The leading common law definition of a "discrete subpart" comes from the case of *Kendall v. GES Exposition Services, Inc.*[8] The *Kendall* court, keeping with the *Black's Law Dictionary* definition of "discrete," found that a discrete subpart is one that is "separate and distinct." I know what you're thinking—"boy, is that helpful." Are there any more synonyms for "discrete" that

---

Matthew Albaugh is with Baker & Daniels LLP and may be reached at matthew.albaugh@bakerd.com.

Published in *Pretrial Practice & Discovery*, Volume 17, Number 1, Fall 2008. © 2008 by the American Bar Association. Reproduced with permission. All rights reserved. This information or any portion thereof may not be copied or disseminated in any form or by any means or stored in an electronic database or retrieval system without the express written consent of the American Bar Association.

the court could march out? In an attempt to establish some parameters for the process of determining whether or not a subpart is discrete, the *Kendall* court proposed that parties follow a two-part test for determining whether a subpart is discrete:

1. Are the interrogatory subparts logically or factually subsumed within and necessarily related to the primary question?
2. Is the first question primary and are subsequent questions secondary to the primary question? Or can the subsequent question stand alone? Is it independent of the first question?

Predictably, the "logically and factually subsumed" prong of the *Kendall* analysis has garnered much attention in subsequent court decisions. It has not led to a bright-line test about whether a subpart should be counted as a separate interrogatory, but courts use the *Kendall* test to see whether the subparts are logically or factually included in the original question. Under this approach, if a subpart is both factually subsumed in and is necessarily related to the primary question, it will not be counted as a discrete subpart, and thus not counted against the 25-interrogatory limit.

Another approach for determining whether or not a subpart is discrete is the so-called "common-theme test." This test is similar to the *Kendall* test because it provides that:

> [A]n interrogatory directed at eliciting details concerning a common theme should not be counted as multiple interrogatories . . . Thus, subparts of interrogatories that relate to a common theme should not be counted as separate interrogatories, but those subparts that inquire into areas apart from the common theme should be counted as separate interrogatories."[9]

The common-theme test considers an interrogatory "containing subparts directed at eliciting details concerning the common theme" to be a single question even if the "breadth of an area inquired about may be disputable."[10]

The common-theme test finds support in Wright & Miller's *Federal Practice and Procedure*, which states that:

> [I]t would appear that an interrogatory containing subparts directed at eliciting details concerning the common theme should be considered a single question . . . On the other hand, an interrogatory with subparts inquiring into discrete areas is more likely to be counted as more than one for purposes of the limitation.[11]

Therefore, under the common-theme test, subparts relating to a common theme are allowed as true subparts of an interrogatory, but those subparts that inquire into areas outside of the common theme should be counted as separate interrogatories.[12]

### Specific Examples of Contested Interrogatories

Abstract discussion and attempts to formulate a one-size-fits-all test for "discrete subparts" likely do nothing but frustrate a practicing litigator looking for firm, definitive guidance. Case law decisions regarding discrete subparts often provide examples, which give some practical guidance for attorneys as well as other courts attempting to determine whether a particular subpart is "discrete."

### Approved Subparts

Subparts that are directly related to the primary question are not discrete. For instance, in *Trevino v. ACB American*, the court found subparts that asked a party to "[i]dentify by caption, court, civil action number, and result all litigation filed against you alleging violations of the Fair Debt Collection Practices Act" were not discrete because they were "subsumed within and related to the primary question."[13] Examples of other interrogatories that have passed muster include:

- "Was [plaintiff] given any warning/reprimand during her employment with Defendant? If so, identify each warning/reprimand by date of incident, brief description of the incidents and person who administered the warning/reprimand by name, gender, position and address."[14]
- "Identify (a) The full name, number or other designation of the train; (b) The name of the manufacturer of each of the train's engines, the manufacturer's serial number and manufacturer's model number; (c) The number of cars included in the train; and, (d) The weight and contents of each car, including the engines, of the train."[15]

These examples seem logically consistent with the formulated tests, that is, the subparts are factually subsumed under the main question and relate to a common theme. Each question identifies a primary theme (past litigation, past warnings, and trains), then seeks information in subparts that relate to that theme. The third example regarding trains may be a stretch, if anything, as the question jumps from trains, to train engines, to the train's cars and the contents of those cars. What, no caboose?

### Discrete Subparts

Unfortunately, the *Kendall* test and the common-theme test have not always been consistently applied, but there are examples of interrogatories with subparts that the court determined were "discrete" and therefore separate for purposes of calculating the number of total interrogatories. For instance, in the same *Trevino* case described above, a party asked through an interrogatory for the identification of each expert witness, the subject matter on which the expert will testify, and the "substance of the facts and opinions to which the expert is expected to testify, and provide a summary of the grounds for each opinion and the expert's qualifications."[16] The court found that the language of these interrogatories actually asked three distinct questions: identification, subject matter, and grounds for each opinion/ expert qualifications.

Similarly, in *Potluri v. Yalamanchili*, the court found that an interrogatory asking the plaintiff to "identify all entities in which Plaintiff owned an interest during the preceding ten years," followed by a second subpart asking the "nature of the business interest," as well as a third subpart asking "for the location of the business interest," were all requests for discrete pieces of information, and therefore should be counted as separate interrogatories for the purposes of the Rule 33(a)(1) numerical limit.[17]

The "expert" interrogatory described in the *Trevino* case is fairly typical in Rule 33 discovery requests. It is unclear why the expert's opinion and grounds for the opinion were not logically and factually subsumed under the same common theme. The same goes for the "business interests" detailed in *Potluri*. These

Published in *Pretrial Practice & Discovery*, Volume 17, Number 1, Fall 2008. © 2008 by the American Bar Association. Reproduced with permission. All rights reserved. This information or any portion thereof may not be copied or disseminated in any form or by any means or stored in an electronic database or retrieval system without the express written consent of the American Bar Association.

cases illustrate that while courts have attempted to fashion a principled test for determining the existence of discrete subparts, frequently the ultimate decision is a case-by-case determination that is more subject to the particular whims of the judge, rather than to the parameters of any particular test.

## Some Additional Caveats

No discussion of discrete subparts under Rule 33(a) would be complete without identifying several commonly used forms of interrogatories. The first involves interrogatories served contemporaneously with requests for admission. The *Safeco* court noted that "an interrogatory that asks the responding party to state facts, identify witnesses, or identify documents supporting the denial of each request for admission contained in a set of requests for admissions usually should be construed as containing a subpart for each request for admission contained in the set" and ultimately treated each request denied for admission as separate subparts of the interrogatories. However, the *Safeco* court did have one caveat: "[T]his does not mean, of course, that every interrogatory of this sort necessarily contains a separate subpart for each underlying request for admission." The court advocated examination of the requests for admission as well as the relationships between them, but also stated that "a strong presumption that each underlying request for admission constitutes a separately countable subpart should be adopted." The presumption does not create a bright-line test, but "will tend to conserve litigant's resources by making it relatively clear what is and is not permitted" and will avoid draining resources over "hypertechnical disputes."[18]

The second common form involves interrogatories that seek both the factual basis of an allegation and the identification of the documents or materials supporting the factual basis, like the sample contention interrogatory described above. As the court in *Willingham v. Ashcroft* noted, when an interrogatory requests information as well as the identification of documents, that interrogatory can be treated as two distinct subparts. "Clearly, a demand for information and a demand for the documents that pertain to that event are two distinct demands because knowing that an event occurred is entirely different from learning about the documents that evidence it occurred. Thus, a demand for information about a certain event and for the documents about it should be counted as two separate interrogatories."[19]

The third common form of interrogatory actually arises from the propounding party's use of definitions and instructions that may, themselves, constitute discrete subparts. Take, for instance, the definition of the word "identify" in many interrogatories. In the most recent set of interrogatories this author received from opposing counsel, the definition of "identify" spanned three pages. Where the interrogatory required the identification of a specific document, the definition of "identify" required the following subparts of information:

- the name, number, form, description, or title of the documents
- the date of the document
- the identify of the author
- the identify of the recipient
- the identify of all copyees
- the present or last known location of any and all copies of the document
- the identity of all persons who have possession, custody, or control of the document
- any claim of privilege
- seven different bits of information for documents that have been destroyed or no longer exist

For litigators representing large clients where 500 copies of a single document may be in existence, this definition will send shivers up their spines. While the definition is certainly objectionable on burden and other grounds, is it also objectionable as violating the numerical limitations of Rule 33? Remarkably, no federal court appears to have spoken to that point.

Headaches or not, interrogatories can be a valuable discovery tool. You, however, should be sure that the number of interrogatories you serve does not exceed the numerical limits in Rule 33(a). Discovery fights such as the ones discussed here do not regularly end up in published decisions, so it is unclear if these cases represent roundly accepted precedent. Although courts' ad hoc approaches mean that no sure way exists to guarantee that an interrogatory containing subparts can withstand scrutiny, carefully crafting your questions to relate factually to a common theme will give you a good argument in response to objections from opposing counsel.

## Endnotes

1. Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co., 105 F.R.D. 16, 42 (S.D.N.Y. 1984).
2. Walker v. Lakewood Condo. Owners Ass'n, 186 F.R.D. 584, 586 (C.D. Cal. 1999).
3. Capacchione v. Charlotte-Mecklenburg Schs., 182 F.R.D. 486, 492 (W.D.N.C. 1998).
4. *See* Safeco of Am. v. Rawstron, 181 F.R.D. 441, 443 (C.D. Cal. 1998).
5. Williams v. Bd. of County Comm'rs of Unified Government of Wyandotte County, 192 F.R.D. 698, 701 (D. Kan. 2000).
6. FED. R. CIV. P. 33 Committee Note (1993).
7. *Id.*
8. Kendall v. GES Exposition Servs., Inc., 174 F.R.D. 684 (D. Nev. 1997).
9. New River Dry Rock v. Falls at Marina Bay, L.P., No. 08-60216, 2008 WL 2620727, at *4 (S.D. Fla. June 30, 2008).
10. White v. Cinemark USA, Inc., No. 04-397, 2005 WL 3881658, at *2–3 (E.D. Cal. Mar. 28, 2005).
11. 8A CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE §2168.1 at 261 (2d ed. 1994).
12. *New River Dry Rock*, 2008 WL 2620727, at *4.
13. Trevino v. ACB Am., Inc., 232 F.R.D. 612, 614 (N.D. Cal. 2006).
14. *Kendall*, 174 F.R.D. at 686.
15. Clark v. Burlington N. R.R., 112 F.R.D. 117, 119–20 (N.D. Miss. 1986).
16. *Trevino*, 232 F.R.D. at 614.
17. Potluri v. Yalamanchili, No. 06-13517, 2007 WL 1201576, at *1–2 (E.D. Mich. Apr. 20, 2007).
18. *Safeco*, 181 F.R.D. at 446.
19. Willingham v. Ashcroft, 226 F.R.D. 57, 60 (D.D.C. 2005).

Published in Pretrial Practice & Discovery, Volume 17, Number 1, Fall 2008. © 2008 by the American Bar Association. Reproduced with permission. All rights reserved. This information or any portion thereof may not be copied or disseminated in any form or by any means or stored in an electronic database or retrieval system without the express written consent of the American Bar Association.